**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

**RUSS HARDEN**,

Plaintiff,

v. **No. 1:26-cv-01124-STA-jay**

**MATTHEWS DEVIN,
JACK HINSON,
BRIANNA STURM, and
PRICILLA HILL HARDEN,**

Defendants.

## REPORT AND RECOMMENDATION

On June 8, 2026, Plaintiff Russ Harden filed a lawsuit against the above-named parties. (Docket Entry ["D.E."] 1). The Court is required to conduct a screening of this action because Harden sought and received *in forma pauperis* status. *See* 28 U.S.C. § 1915(e)(2)(B). (D.E. 2, 11). This case has been referred to the undersigned United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05.

### I.

This matter arises from an ongoing domestic relations matter in Decatur County, Tennessee. Harden is the father of two minor children. (D.E. 1 at 8). Harden's wife, Priscilla Hill Harden ("Hill Harden"), commenced a divorce proceeding against him on April 22, 2026, in the Decatur County Chancery Court. (*See* D.E. 7-3). Previously, in 2021, Hill Harden "was stripped of her parental rights with zero visitation due to violent crimes against the children" through a permanent child welfare decree and protective custody order. (D.E. 1 at 8, ¶ 5–6).

Harden alleges that an Assistant District Attorney, Devin Matthews ("ADA Matthews"), is involved in the Decatur County proceedings and has taken actions detrimental to him and his minor children. According to Harden, ADA Matthews has "weaponized her badge, her prosecutorial office, and local law enforcement assets to cover up a series of federal crimes, directly targeting, threatening, and hunting a 14-year-old minor child who is the primary eyewitness to her criminal corruption." (*Id*. at 8). Harden further avers that ADA Matthews has taken actions "to keep Chancellor Hoover blind to [Hill Harden's] violent criminal history" and that the prosecutor's "deliberate strategy was to isolate the 14-year-old witness, manipulate him outside the view of the court, and use him as a tool to seize physical possession of [Harden's] 5-year-old daughter." (*Id*. at ¶ 7).

It further appears that attorney Jack Hinson filed Hill Harden's complaint for divorce but had previously represented Harden. (*Id*. at ¶ 8). Harden filed a motion to disqualify Hinson due to his previous representation. (*Id*.) Hinson filed a motion to withdraw as counsel from the divorce proceeding on May 22, 2026. (D.E. 7-3).

Harden contends that ADA Matthews "abused her official prosecutor access to spy on the court files" and "panicked" after seeing Harden's motion to disqualify Hinson. (D.E. 1 at 8 ¶ 9). ADA Matthews, "realizing that the discovery of her fraud would send parolee [Hill Harden] to jail–and that Harden would expose [ADA] Matthews as the mastermind under pressure—launched an immediate emergency campaign to strip [Harden] of custody and silence the witness." (*Id*.) Harden states that ADA Matthews "ordered [Hill Harden] to locate and seize the 14-year-old witness 'at any cost,'" and for Hill Harden to take the minor to the courthouse to file an emergency custody petition. (*Id*. at 8-9, ¶¶ 11–12).

Unaware that ADA Matthews was allegedly conspiring with Hill Harden against him, Harden contacted ADA Matthews about his concerns that Hill Harden had violated the 2021 order. (*Id*. at 9 ¶ 13). ADA Matthews, according to Harden, instructed him to go to Hill Harden's house, which he contends was an effort to entrap him. (*Id*. at ¶ 14). After speaking with Harden, ADA Matthews then allegedly contacted Hill Harden to advise her that Harden was coming to her home and for her to file a fraudulent police report and to coerce their son into falsely accusing Harden of abusing him. (*Id*. at ¶ 15). Harden contacted 911 to report Hill Harden, but the "local dispatchers actively suppressed [Harden's] reporting." (*Id*. at ¶ 17). ADA Matthews apparently "intercepted the police dispatch, halted the officer from responding to the scene, and ordered him to carry false-report paperwork dictated by [ADA Matthews'] office." (*Id*.) Police returned Harden's son to him, and advised Harden that ADA Matthews instructed them not to arrest Hill Harden for custodial interference. (*Id*. at 10 ¶ 18).

A few days later, Harden's son told him that "ADA Matthews was orchestrating the entire plot and had threatened his life." (*Id*. at ¶ 21). Harden and his family then "fled Decatur County immediately to save their lives, seeking emergency refuge across multiple counties." (*Id*.) Harden spoke to an FBI agent in Jackson, Tennessee, about his situation, who advised him to stay away from Decatur County. (*Id*. at ¶ 22). After he spoke with the FBI agent,

> In a desperate bid to clear her tracks, . . . ADA Matthews then weaponized the Department of Children's Services. She deployed DCS Worker Brianna Sturm of the Carl Perkins Center to issue a highly irregular demand for an isolated, unsupervised interrogation of the minor witness. Sturm actively regurgitated the legal arguments of ADA Matthews, attempting to bypass the 2021 order and isolate the child to extract a false confession.

(*Id*. at ¶ 23). Believing that Sturm's request was irregular, Harden spoke with his divorce attorney. (*Id*.) His divorce attorney, however, appeared to be dismissive of Harden's concerns. (*Id*.)

Harden then filed three civil rights complaints with the United States Department of Justice. (*Id*. at ¶ 24). "ADA Matthews grew increasingly desperate" and "lied to a local judge to secure an emergency summons, fraudulently claiming the minor witness was in immediate danger. (*Id*.) Harden states that "a summons was deployed via a sheriff to the paternal grandfather's home," which Harden characterizes as "an active, ongoing attempt by an assistant district attorney to use armed deputies to seize a federal witness before Chancellor Hoover uncovers the perjury." (*Id*.)

On June 8, 2026, Harden filed this action. (D.E. 1). Invoking this Court's federal question jurisdiction, Harden bases his suit on the following seven federal criminal statutes:

18 U.S.C. § 241 – Conspiracy Against Rights

18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

18 U.S.C. § 1201 – Kidnapping

18 U.S.C. § 1343 – Fraud by wire, radio, or television

18 U.S.C. § 1512 – Tampering with a witness, victim, or an informant

18 U.S.C. § 1513 – Retaliating against a witness, victim, or an informant

18 U.S.C. § 1951 – Interference with commerce by threats or violence

(*Id*. at 7).

Harden requests that this Court:

1. Issue an immediate Temporary Restraining Order enjoining ADA Devin Matthews, Priscilla Hill Harden, Brianna Sturm, and all local law enforcement personnel acting under their direction, from executing any local summons, attempting to seize the minor children, or forcing the minor witness into an unsupervised interrogation.

2. Issue an order staying all state-level custody or divorce actions in Decatur County, transferring oversight directly to a federal magistrate or an unbiased, non-compromised external jurisdiction.

3. Grant an emergency federal protective order for the minor witness, [REDACTED], and his family against Decatur County officials pending the outcome of the Department of Justice investigation.

(*Id*. at 12-13).

As grounds for a temporary restraining order, Harden states that his case has a high likelihood of success on the merits because he possesses "irrefutable proof . . . demonstrating a clear violation of 18 U.S.C. §§ 241, 242, 1201, 1343, 1512, 1513, and 1951." (*Id*. at 12 ¶ 28). He further contends that without emergency injunctive relief he will suffer irreparable injury because "a desperate, armed county prosecutor will successfully utilize local police power to isolate, seize, and silence a 14-year-old minor witness who is currently running for his life." (*Id*.) He presents that the balance of equities favors injunctive relief as "[r]estraining a corrupt prosecutor from weaponing DCS and local police to execute witness tampering causes no harm to the state, while the failure to intervene guarantees the destruction of a minor child's safety." (*Id*.) Finally, Harden submits that "public interest demands that federal courts immediately halt state prosecutors who threaten the lives of children to cover up their own official misconduct." (*Id*.) Harden urges the Court to issue the temporary restraining order *ex parte* pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure because: 1) providing notice to the defendants would result in an imminent threat of seizure of his son; 2) there is a history of information leaks; 3) notice would create a severe risk of witness intimidation and harm to his son; and 4) irreparable injury before the hearing could occur if "Defendants . . . take physical possession of the minor witness, eliminate the father's ability to protect him, and manipulate or extract a coerced confession from the child in isolation, completely rendering any subsequent federal hearing moot." (*Id.*at 6).

## II.

A. 28 U.S.C. § 1915 Screening

Under Local Rule 4.1(b)(2), the Clerk of the Court will only issue summonses in cases with non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* at the Court's direction after the Court conducts a screening under 28 U.S.C. § 1915(e)(2)(B). Under that provision, the Court shall dismiss the case at any time if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* This Report and Recommendation constitutes the Court's screening.

B. Legal Standard

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

C. Analysis

The Court should abstain from this matter under the *Younger* doctrine. Harden is involved in an ongoing state child custody proceeding. The state proceeding implicates an important state interest, and it affords him the opportunity to raise any federal questions he seeks to raise. Alternatively, if the Court did not abstain, Harden's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

**1. This Court should abstain under *Younger*.**

The relief Harden seeks from this Court would directly affect his pending domestic relations case. Accordingly, this Court should abstain. Our structure of government urges federal courts to abstain from exercising jurisdiction when ruling on a claim would interfere with ongoing state proceedings. *See Younger v. Harris*, 401 U.S. 37, 41 (1971). When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988). If the state defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature if federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present. Harden is a party in an ongoing child custody case in state court, and child custody matters are exclusively the province of the state. *See Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). The third *Younger* requirement is that Harden must have an opportunity to assert his federal challenges in the state court proceeding. The pertinent inquiry is not whether Harden can convince the state courts to agree with him, but whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). At this point, the burden rests on Harden to show that state procedural law bars him from presenting his claims. *Pennzoil Co.*, 481 U.S. at 14. Here, Harden has not alleged that he cannot present any of the allegations and claims he raises in this matter in the pending domestic relations court case. *Younger*'s requirements are satisfied, and this Court should abstain from interfering in any pending state court actions involving Harden and his child custody dispute.

**2. Federal criminal statutes do not create a private cause of action.**

If the Court were not required to abstain under *Younger*, Harden's case should be dismissed for failure to state a claim upon which relief may be granted. Harden bases his suit on the following seven federal criminal statues: 1) 18 U.S.C. § 241 – Conspiracy Against Rights; 2) 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law; 3) 18 U.S.C. § 1201 – Kidnapping; 4) 18 U.S.C. § 1343 – Fraud by wire, radio, or television; 5) 18 U.S.C. § 1512 – Tampering with a witness, victim, or an informant; 6) 18 U.S.C. § 1513 – Retaliating against a witness, victim, or an informant; and 7) 18 U.S.C. § 1951 – Interference with commerce by threats or violence. (D.E. 1 at 7). Harden cannot bring criminal charges against others.

"Absent a private right of action, a plaintiff cannot recover civilly for violation of a federal criminal statute." *Johanan v. Broaden*, No. 1:24 CV 277, 2024 WL 3904010, at *1 (N.D. Ohio

Aug. 22, 2024). None of the criminal statutes Harden relies upon confer a private cause of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (affirming the dismissal of claims brought under 18 U.S.C. §§ 241 and 242 "because [plaintiff] has no private right of action under either of these criminal statutes"); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("[v]iolations of [18 U.S.C. § 1341] do not give rise to [an] independent, private cause[] of action."); *Malloy v. Watchtower Bible & Tract Soc'y*, No. 18-1041, 2019 WL 190344, at *1 (6th Cir. Jan. 2, 2019) ("because §§ 1201, [and] 241 . . . do not create a private right of action, [plaintiff] lacked standing to raise these claims."); *Command v. Bank of Am., N.A.*, No. 1:10-CV-1117, 2014 WL 4104719, at *13 (W.D. Mich. Aug. 19, 2014) ("plaintiffs cannot maintain a cause of action under the Hobbs Act [18 U.S.C. § 1951] because it is a federal criminal statute which does not give rise to a private cause of action."); *West v. Landau*, No. 25-10420, 2025 WL 1108259, at *4 (E.D. Mich. Apr. 14, 2025), *reconsideration denied*, No. 25-10420, 2026 WL 373138 (E.D. Mich. Feb. 10, 2026) ("[c]riminal statutes do not generally confer a private cause of action in a civil case, and the criminal statutes at issue here [18 U.S.C. §§ 1501–1521] create no exception to that general rule."). Because Harden cannot bring criminal charges against Defendants in this matter, he has failed to state a claim upon which relief may be granted.

**III.**

For these reasons, the Court should **DISMISS** Plaintiff Russ Harden's Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Respectfully submitted, this the 11th day of September, 2026.

**s/Jon A. York**
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDATION DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**